IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LARRY PINSON and<br>LENNELLE PINSON, husband and wife, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| vs. | )<br>) | Case No. 06-CV-162-GKF-SAJ |
| EQUIFAX CREDIT INFORMATION<br>SERVICES, INC.; CSC CREDIT SERVICES;<br>EXPERIAN INFORMATION SOLUTIONS;<br>TRANS UNION, L.L.C.; PROVIDIAN<br>NATIONAL BANK; PROVIDIAN FINANCIAL<br>CORPORATION; CAPITAL ONE SERVICES,<br>INC.; CAPITAL ONE BANK FSB; SALLIE<br>MAE, INC.; USA GROUP; LOAN SERVICES<br>INC.; AND LITTON LOAN SERVICING, LP; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## **O P I N I O N   A N D   O R D E R**

This matter comes before the Court on Defendant Trans Union LLC's Motion for Summary Judgment. [Document No. 199]. For the reasons set forth below, the motion for summary judgment is granted.

**I.    *Pro se* Status and Motion for Summary Judgment Standards**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, [the court] must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Bryant v. Farmers Insurance Exchange*, 432 F.3d 1114, 1124 (10th Cir. 2005). "The nonmoving party 'must identify sufficient evidence which would require submission of the case to a jury.'  Where the

nonmoving party bears the burden of proof at trial, that party must go beyond the pleadings and identify specific facts that demonstrate the existence of an issue to be tried by the jury." *Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1264 (10th Cir. 2007) (internal citations omitted). To survive a motion for summary judgment, the nonmovant "must establish that there is a genuine issue of material fact . . . ." *Matsushita Electric Industries v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).

Plaintiffs Larry and Lennelle Pinson (the "Pinsons") are *pro se* litigants. "District courts must take care to insure that *pro se* litigants are provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings." *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985) (citation omitted, italics in original). The Tenth Circuit Court of Appeals "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)). Furthermore, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett*, 425 F.3d at 840; *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993) ("[I]t is not the proper function of the district court to assume the role of advocate for the pro se litigant.").

Defendant Trans Union LLC ("Trans Union") identified numerous undisputed material facts in their motion. [Docket No. 199 at 11 - 17]. The Pinsons did not specifically respond to or address the undisputed facts in the manner contemplated by the Local Civil Rules. [Docket No. 231]. The Local Civil Rules of the United States District Court for the Northern District of Oklahoma provide that "[a]ll material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of

2

material facts of the opposing party." LcvR 56.1(c). Pursuant to the local rules, the Court could deem Trans Union's material facts confessed. However, because the Pinsons are *pro se*, the Court has considered the facts the Pinsons attempt to controvert in the body of their response brief.

## II.     Factual and Procedural Background

The Pinsons filed this action on March 16, 2006. [Docket No. 2]. On November 8, 2006, they filed a First Amended Complaint in which they allege violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1651 *et seq.* (Count I), punitive damages under the FCRA (Count II), and several state law causes of actions (Counts III - V). [Docket No. 77].

The claims in this case duplicate claims the Pinsons brought in a prior suit filed in this district in September 2003, against Trans Union, Experian, CSC Credit Services, Inc., and Equifax Credit Information Services, Inc. The September 2003 Complaint asserted claims based on FCRA, punitive damages, and state law causes of action. On March 25, 2005, the September 2003 lawsuit was dismissed without prejudice at the Pinsons' request. [Case No. 03-cv-628, Docket No. 52].

The Pinsons notified Trans Union of several disputes from March 2001 through November 2003. Trans Union received Pinsons' most recent dispute on November 26, 2003. [Docket No. 200-14, ¶3, Declaration of Eileen Little]. With two exceptions, Trans Union removed all credit information from the Pinsons' credit files that the Pinsons had identified as inaccurate, and did so more than two years before the Pinsons filed this action. [Docket No. 200-14, ¶ 4 - 8]. The two exceptions pertain to credit information on the Pinsons' Chase Manhattan and Compass Bank accounts. Although the credit information on the Chase Manhattan and Compass Bank accounts was not removed from the Pinsons' credit file prior to March 2004, the most recent credit report containing the Chase Manhattan and Compass Bank credit information of which plaintiffs complain

was dated February 25, 2004.  [Docket No. 200-3 at 14, 32, 85, 86; Docket No. 200-12 at 7, 30, 33, 86 (listing 2/25/04 as latest report date)].

The Pinsons claim that some credit reports were published to third parties after 2004.  The Pinsons refer to "Ext. 6" and the dates "09-07-2006" and "06-26-04."[1]  The Court located a document titled "Ext. 6 CSC/Equifax Credit Reports for Larry & Lenelle Pinson (From: 6-2001 to 8-2002)."  [Docket No. 243 at 38 of 115].  "Ext. 6" does not refer to Trans Union and does not include reports after 2002.  The Pinsons do not include any evidentiary materials indicating the existence of a Trans Union report dated after February 25, 2004.  In a document titled "Response to Honorable Judge Sam Joyner Opinion and Order CSC 2nd Set of Interrogatories," the Pinsons stated that they could not answer interrogatory number 25 "because plaintiff Do Not Have any Credit report, that is past March 15, 2004." [Docket No. 153 at 1, underline and capitals in original].

**III.    The Fair Credit Report Act – Statute of Limitations**

Trans Union is a Consumer Reporting Agency under § 1681a(f) of FCRA.  The Pinsons allege Trans Union violated §§ 1681e(b)  and 1681i of FCRA.  Section 1681e(b) provides that a consumer reporting agency shall follow reasonable procedures to assure maximum possible accuracy of the information reported in a consumer report.  Section 1681i requires a consumer reporting agency to reinvestigate a dispute upon notification from a consumer.

The FCRA statute of limitations at the time of the alleged violations in this action was  two years from the date on which the liability arises, subject to a single discovery exception for cases

---

[1] The Pinsons filed their response to the motion for summary judgment on July 20, 2007, with no exhibits appended thereto.  On July 30, 2007, the Pinsons filed 1,697 pages of exhibits.  [Docket Nos. 242 - 244].  In view of the fact that plaintiffs are *pro se*, the Court accepts and considers plaintiffs' voluminous belated exhibits in opposition to the various motions for summary judgment.

involving a defendant's willful misrepresentation of material information.[2] 15 U.S.C. § 1681p. To maintain a cause of action under 15 U.S.C. § 1681e(b) or 1681i, a plaintiff must establish that the consumer reporting agency published a credit report that contained inaccurate information about an individual to a third person. *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 833-34 (7th Cir. 2004); *Washington v. CSC Credit Services, Inc.*, 199 F.3d 263, 267 (5th Cir. 2000). The Pinsons filed this action on March 16, 2006. The Pinsons' FCRA claims must therefore be based on the issuance of credit reports within the preceeding two years (after March 16, 2004).

Trans Union maintains, and the Pinsons do not provide evidentiary materials to contradict, that this action involves no credit reports issued after February 25, 2004. Because no credit reports about which the Pinsons complain were issued within two years of the filing of the lawsuit, the Pinsons' FCRA claims are untimely.

Congress amended FCRA's statute of limitations on December 4, 2003, with an effective date of March 31, 2004. The new statute of limitations provides that a FCRA action may be brought "not later than the earlier of – (1) 2 years after the date of discovery by the plaintiff on the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." Pub. L. No. 108-159 (2003); 15 U.S.C. § 1681p.

In *Landgraf v. USI Film Products*, 511 U.S. 244, 264 (1994), the Supreme Court emphasized that the law does not favor retroactive application of statutes. A court must determine whether Congresss has expressly prescribed the statute's reach. When a statute contains no express

---

[2] The Pinsons do not contend that a failure to discover the alleged violations tolls the two year statute of limitations. Were they to do so, the argument would have no merit, as courts did not apply a discovery exception to FCRA statute of limitations but for cases involving a defendant's willful misrepresentation of material information. *TRW, Inc. v. Andrews*, 534 U.S. 19, 29 (2001); *Clark v. State Farm & Casualty Insurance Co.*, 54 F.3d 669, 672 (10th Cir. 1995). As discussed below, the Pinsons have not established there is a genuine issue of material fact with respect to their allegation of Trans Union's willful intent.

command, the court must determine whether the new statute would have retroactive effect "i.e. whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Simons v. Southwest Petro-Chem, Inc.*, 28 F.3d 1029, 1032 (10th Cir. 1994) (citing *Landgraf*, 511 U.S. at 280). Section 1681p does not clearly indicate that it applies retroactively. As applied to the parties in this case, the statute would revive a cause of action that did not exist at the time of the filing of the lawsuit. The Court therefore concludes that the amended statute of limitations cannot be retroactively applied. *See also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 951 (7th Cir. 2006) (dealing with a different section of FCRA but noting that the recent amendment to FCRA does not apply to offers made before its effective date); *Benjamin v. Coker*, 2007 WL 433574 at *3 (D. Ariz. Feb. 6, 2007) ("Defendants' rights would be altered and their liability increased because they are being forced to defend an action that was previously time-barred.").

The Court concludes that the Pinsons' previously filed but dismissed lawsuit does not operate to toll the statute of limitations. *Brown v. Hartshorne Public School District*, 926 F.2d 959, 961 (10th Cir. 1991) ("It is hornbook law that, as a general rule, a voluntary dismissal without prejudice leaves the parties as though the action had never been brought. In the absence of a statute to the contrary, the limitation period is not tolled during the pendency of the dismissed action.") (citations omitted).

In response to the motion for summary judgment, the Pinsons argue that an "on going issue with discovery . . . remains to be resolved with this court." [Docket No. 231]. The deadline for

discovery was June 1, 2007. [Docket No. 164]. The Pinsons filed a motion to compel discovery on August 14, 2007 [Docket No. 252], and a motion for discovery on August 31, 2007 [Docket No. 257].[3]  On October 26, 2007, the Pinsons filed a motion to clarify a discovery ruling by the Magistrate Judge. [Docket No. 273]. The Pinsons' reference in their response brief to outstanding discovery issues may be a reference to the issues raised in their August 2007 motions. Each of those discovery motions was decided by the Magistrate Judge. [Docket No. 268 (minute order dated September 13, 2007), 274 (order dated January 10, 2008)]. No outstanding discovery motions are pending, and plaintiffs have not attempted to supplement their responses with further exhibits. Trans Union also notes that it produced over 1,200 pages of document to the Pinsons. [Docket No. 249 at 5]. The Court concludes that the Pinsons have not identified any outstanding discovery issue, let alone one that might merit delaying a ruling on Trans Union's motion for summary judgment.

**IV.    State Law Claims Preempted**

The Pinsons' First Amended Complaint contains allegations that defendants acted willfully and recklessly in disregard of the Pinsons' rights. In *Safeco Ins. Co. of America v. Geico*, __ U.S. __, 127 S. Ct. 2201, 2215 (2007), the United States Supreme Court interpreted "willfully fails to comply" under 15 § 1681n of FCRA as including recklessness. "A company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.*

Trans Union affirmatively represents that it did not knowingly or recklessly violate the FCRA or act in conscious disregard of the Pinson's rights. [Docket No. 200-13, ¶ 7-11 Declaration

---

[3] This latter motion was withdrawn at plaintiffs' request. [Docket No. 270, 271, 272].

of William Stockdale]. The Pinsons have provided nothing to support their conclusory statements on willfulness. Further, each of the Pinsons testified in their depositions that they had no knowledge Trans Union acted in willful disregard of their rights.[4] Upon review of the evidentiary materials submitted, this Court finds and concludes that the Pinsons have not identified any specific facts that demonstrate the existence of a genuine material fact as to malice or willful intent on the part of Trans Union.

FCRA preempts certain state law claims absent malice or willful intent. Pursuant to 15 U.S.C. § 1681h(e), no consumer may bring an action "in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency" based on information which that agency is required to disclose in accordance with the FCRA "except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). Because the Pinsons have presented no material fact to support their allegation of Trans Union's malice or willful intent, the Pinsons state law claims of libel and false light invasion of privacy are preempted.

Plaintiffs only remaining state claim is a punitive damage claim under Oklahoma law. [Docket No. 77 at 11]. Plaintiffs have produced nothing to raise a genuine issue of material fact

---

[4] In his deposition, Larry Pinson testified as follows: "Q: If you're aware, did Trans Union ever conceal anything from you? A: Not to my knowledge. I mean, I can't honestly say that they have. I don't know. Q: As far as you're aware? A: I'm not aware of anything. Q: Did Trans Union ever misrepresent anything to you? A: Not to my knowledge. Q: Okay. To your knowledge, did Trans Union ever knowingly and intentionally commit an act in conscious disregard for your rights? A: Not to my – I don't know. See, I really don't know that. Q: Do you have – A: I'm sorry. Nothing obvious that I can recognize. Q: And nothing that you can remember? A: Remember at this point, right. A: Did Trans Union ever mislead you in any way about the contents of your credit report? A: That I can remember anything. Q: Do you have any evidence that Trans Union intended to injure you? A: I don't know. I have no way of knowing that." [Docket No. 200-2 at 51].

In her deposition, Lenelle Pinson testified as follows: "Q: As far as you know, did Trans Union ever conceal anything to you? A: No. Q: Did Trans Union ever knowingly and intentionally commit an act in conscious disregard for your rights? A: Not as far as I know. Q: Okay. Do you have any evidence that Trans Union should have had reason to question the reliability of information that it was getting from your creditors? A: No." [Docket No. 200-11 at 12].

supportive of their claim for punitive damages. Furthermore, plaintiffs' state law claim for punitive damages is not an independent cause of action, but depends upon the existence of a separate claim. *Smith v. Warehouse Market, Inc.*, 1978 OK 125, ¶ 10, 586 P.2d 724, 726 (Okla. 1978) ("[I]n this state a claim for punitive damages cannot be a separate and independent cause of action, but is only incidental or collateral to the claim for actual damages. . . .").

**WHEREFORE**, Defendant Trans Union LLC's Motion for Summary Judgment. [Document No. 199] is granted.

**IT IS SO ORDERED** this 31st day of March 2008.

*[signature]*
Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma