## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

LARRY PINSON and                              )
LENNELLE PINSON, husband and wife,            )
                                              )
                Plaintiffs,                  )
                                              )
vs.                                           )        Case No. 06-CV-162-GKF-SAJ
                                              )
EQUIFAX CREDIT INFORMATION                    )
SERVICES, INC.; CSC CREDIT SERVICES;          )
EXPERIAN INFORMATION SOLUTIONS;               )
TRANS UNION, L.L.C.; PROVIDIAN                 )
NATIONAL BANK; PROVIDIAN FINANCIAL            )
CORPORATION; CAPITAL ONE SERVICES,            )
INC.; CAPITAL ONE BANK FSB; SALLIE            )
MAE, INC.; USA GROUP; LOAN SERVICES           )
INC.; AND LITTON LOAN SERVICING, LP;          )
                                              )
                Defendants.                  )

## O P I N I O N   A N D   O R D E R

This matter comes before the Court on Defendant Equifax Information Services LLC's Renewed and Amended Motion for Summary Judgment [Document No. 290].  Defendant Equifax Information Services LLC ("Equifax") seeks summary judgment against plaintiffs Larry Pinson and Lennelle Pinson (the "Pinsons").  For the reasons set forth below, the amended motion for summary judgment is granted.

### I.   *Pro se* Status and Motion for Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "When applying this standard, [the court] must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Bryant v.*

*Farmers Insurance Exchange*, 432 F.3d 1114, 1124 (10th Cir. 2005). "The nonmoving party 'must identify sufficient evidence which would require submission of the case to a jury.' Where the nonmoving party bears the burden of proof at trial, that party must go beyond the pleadings and identify specific facts that demonstrate the existence of an issue to be tried by the jury." *Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1264 (10th Cir. 2007) (internal citations omitted). To survive a motion for summary judgment, the nonmovant "must establish that there is a genuine issue of material fact . . . ." *Matsushita Electric Industries v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).

The Pinsons are *pro se* litigants. "District courts must take care to insure that *pro se* litigants are provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings." *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985) (citation omitted, italics in original). The Tenth Circuit Court of Appeals "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)). Furthermore, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett*, 425 F.3d at 840; *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993) ("[I]t is not the proper function of the district court to assume the role of advocate for the pro se litigant.").

Equifax identified numerous undisputed material facts in its motion and also adopted the statement of undisputed material facts in the motion for summary judgment filed by defendant CSC Credit Services, Inc. ("CSC") [Docket No. 290 at 1-6]. The Pinsons did not specifically respond to or address the undisputed facts in the manner contemplated by the Local Civil Rules. [Docket No.

297].  The Local Civil Rules of the United States District Court for the Northern District of Oklahoma provide that "[a]ll material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party."  LcvR 56.1(c).  Pursuant to the local rules, the Court could deem Equifax's material facts confessed.  However, because the Pinsons are *pro se*, the Court has considered the facts the Pinsons attempt to controvert in the body of their response brief.

## II.       Factual and Procedural Background

The Pinsons filed this action on March 16, 2006.  [Docket No. 2].  On November 8, 2006, they filed a First Amended Complaint in which they allege violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1651 *et seq.* (Count I), punitive damages under the FCRA (Count II), and several state law causes of actions (Counts III - V).  [Docket No. 77].

The claims in this case duplicate claims the Pinsons brought in a prior suit filed in this district in September 2003, against Equifax, CSC, Trans Union LLC, and Experian Information Solutions.  The September 2003 Complaint asserted claims based on FCRA, punitive damages, and state law causes of action.  On March 25, 2005, the September 2003 lawsuit was dismissed without prejudice at the Pinsons' request.  [Case No. 03-cv-628, Docket No. 52].

Equifax represents that it stores and maintains credit files on a computer system known as the Automated Credit Reporting On-line Package ("ACROPAC"), but that it does not own all of the credit files stored on ACROPAC.  Rather, some of the files are owned and maintained by affiliates of Equifax.  Here, pursuant to the Equifax-CSC Affiliate Agreement, Equifax contends that CSC is the owner of the Pinsons' credit files.  Any disputes received by Equifax from the Pinsons

concerning any information in their credit files would have been forwarded to CSC for handling. [Docket No. 290-2, Declaration of Tina Sapere, ¶¶ 4 - 8].

CSC alleged that on October 20, 2003, based on the Pinsons' allegations that their credit reports contained inaccurate information, CSC took the Pinsons' credit reports offline.  Once the reports were taken offline, no third parties were able to view the credit information.  CSC did not publish the Pinsons' credit reports after they were taken offline on October 20, 2003.  Nor did CSC place the Pinsons' credit reports back online after October 20, 2003.   [Docket No. 193-13, Declaration of Janice L. Fogleman, ¶¶ 3 - 5].  Equifax contends that it did not publish the Pinsons' credit information to any third parties from March 16, 2004 to the present.   [Docket No. 290-2, Sapere Declaration, ¶ 9].

The Pinsons have affirmatively represented they have no credit reports dated after March 15, 2004.  In a document titled "Response to Honorable Judge Sam Joyner Opinion and Order CSC 2nd Set of Interrogatories," the Pinsons stated they could not answer interrogatory number 25 "because plaintiff Do Not Have any Credit report, that is past March 15, 2004." [Docket No. 153 at 1, underline and capitals in original].

The Pinsons refer to "Ext. 6" and the dates "09-07-2006" and "06-26-04."[1]  After searching through the voluminous evidentiary materials submitted by the Pinsons, the Court located a document titled "Ext. 6 CSC/Equifax Credit Reports for Larry & Lenelle Pinson (From: 6-2001 to 8-2002)."  [Docket No. 243 at 38 of 115].  "Ext. 6" refers to CSC and Equifax, but does not include reports after 2002.

---

[1] The Pinsons filed their response to the motion for summary judgment on July 20, 2007, with no exhibits appended thereto. On July 30, 2007, the Pinsons filed 1,697 pages of exhibits.  [Docket Nos. 242 - 244].  In view of the fact that the Pinsons are *pro se*, the Court accepts and considers plaintiffs' voluminous belated exhibits in opposition to the various motions for summary judgment.

### III.    The Fair Credit Report Act – Statute of Limitations

Equifax is a Consumer Reporting Agency as defined by the FCRA.  [Docket No. 290-2, Sapere Declaration, ¶ 3].  The Pinsons claim that Equifax violated §§ 1681e(b) and 1681i of FCRA.  Section 1681e(b) provides that a consumer reporting agency shall follow reasonable procedures to assure maximum possible accuracy of the information reported in a consumer report.  Section 1681i requires a consumer reporting agency to reinvestigate a dispute upon notification from a consumer.

The statute of limitations established by the FCRA at the time of the alleged violations in this action was two years from the date on which the liability arises, subject to a single discovery exception for cases involving a defendant's wilful misrepresentation of material information.[2]  15 U.S.C. § 1681p.  To maintain a cause of action under 15 U.S.C. § 1681e(b) or 1681i, a plaintiff must establish that the consumer reporting agency published a credit report that contained inaccurate information about an individual to a third person.  *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 833-34 (7th Cir. 2004); *Washington v. CSC Credit Services, Inc.*, 199 F.3d 263, 267 (5th Cir. 2000).  The Pinsons filed this action on March 16, 2006.  The Pinsons' FCRA claims must therefore be based on the issuance of credit reports within the preceding two years (March 16, 2004).

Equifax maintains, and the Pinsons do not provide evidentiary materials to contradict, that it published no credit reports to third parties after March 16, 2004.  [Docket No. 290-2, Sapere Declaration, ¶ 9].  Because no credit reports about which the Pinsons complain were issued within two years of the filing of the lawsuit, the Pinsons' FCRA claims are untimely.

---

[2]   The Pinsons do not contend that a failure to discover the alleged violations tolls the two year statute of limitations.  Were they to do so, the argument would have no merit, as courts do not apply a discovery exception to the FCRA statute of limitations, except in cases involving a defendant's willful misrepresentation of material information.  *TRW, Inc. v. Andrews*, 534 U.S. 19, 29 (2001); *Clark v. State Farm & Casualty Insurance Co.*, 54 F.3d 669, 672 (10th Cir. 1995).  As discussed below, the Pinsons have not established a genuine issue of material fact with respect to their allegation of CSC's willful intent.

Congress amended the FCRA statute of limitations on December 4, 2003, with an effective date of March 31, 2004. The new statute of limitations provides that a FCRA action may be brought "not later than the earlier of – (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." Pub. L. No. 108-159 (2003); 15 U.S.C. § 1681p.

In *Landgraf v. USI Film Products*, 511 U.S. 244, 264 (1994), the Supreme Court emphasized that the law does not favor retroactive application of statutes. A court must determine whether Congress has expressly prescribed the statute's reach. When a statute contains no express command, the court must determine whether the new statute would have retroactive effect "i.e. whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Simons v. Southwest Petro-Chem, Inc.*, 28 F.3d 1029, 1032 (10th Cir. 1994) (citing *Landgraf*), 511 U.S. at 280. Section 1681p does not clearly indicate that it applies retroactively. As applied to the parties in this case, the statute would revive a cause of action that did not exist at the time of the filing of the lawsuit. The Court therefore concludes that the amended statute of limitations cannot be retroactively applied. *See also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 951 (7th Cir. 2006) (dealing with a different section of FCRA but noting that the recent amendment to FCRA does not apply to offers made before its effective date); *Benjamin v. Coker*, 2007 WL 433574 at *3 (D. Ariz. Feb. 6, 2007) ("Defendants' rights would be altered and their liability increased because they are being forced to defend an action that was previously time-barred."

6

The Court concludes that the Pinsons' previously filed but dismissed lawsuit does not operate to toll the statute of limitations. *Brown v. Hartshorne Public School District*, 926 F.2d 959, 961 (10th Cir. 1991) ("It is hornbook law that, as a general rule, a voluntary dismissal without prejudice leaves the parties as though the action had never been brought. In the absence of a statute to the contrary, the limitation period is not tolled during the pendency of the dismissed action.") (citations omitted). Further, Oklahoma's saving statute, OKLA. STAT. tit. 12 § 100, which provides that a plaintiff has one year from the nonmerit dismissal of an action to refile, does not resurrect the Pinsons' claims. When Congress has provided a federal statute of limitation for a federal claim, state tolling and saving provisions are not applicable. *Brown*, 926 F.2d at 961.

In response to the motion for summary judgment, the Pinsons argue that an ongoing issue with discovery remains to be resolved with this court. [Docket No. 297, p. 4]. The deadline for discovery was June 1, 2007. [Docket No. 164]. The Pinsons filed a motion to compel discovery on August 14, 2007 [Docket No. 252], and a motion for discovery on August 31, 2007 [Docket No. 257].[3] On October 26, 2007, the Pinsons filed a motion to clarify a discovery ruling by the Magistrate Judge. [Docket No. 273]. The Pinsons' reference in their response brief to outstanding discovery issues may be a reference to the issues raised in their August 2007 motions. Each of those discovery motions was decided by the Magistrate Judge. [Docket No. 268 (minute order dated September 13, 2007), Docket No. 274 (order dated January 10, 2008)]. No outstanding discovery motions are pending, and plaintiffs have not attempted to supplement their response to the motion for summary judgment with further exhibits. The Court concludes that the Pinsons have not

---

[3] The latter motion was withdrawn at plaintiffs' request. [Docket No. 270, 271, 272].

7

identified any outstanding discovery issue, let alone one that might merit delaying a ruling on Equifax's motion for summary judgment.

## IV. State Law Claims Preempted

The Pinsons' First Amended Complaint contains allegations that defendants acted willfully and recklessly in disregard of the Pinsons' rights. In *Safeco Ins. Co. of America v. Geico*, __ U.S. __, 127 S. Ct. 2201, 2215 (2007), the United States Supreme Court interpreted "willfully fails to comply" under 15 § 1681n of FCRA as including recklessness. "A company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.*

Equifax maintains it is entitled to summary judgment because the Pinsons have produced nothing in support of their conclusory statements of willfulness. Further, each of the Pinsons testified in their depositions that they had no knowledge that CSC – Equifax's affiliate – had acted in willful disregard of their rights.[4] Upon review of the evidentiary materials submitted, this Court finds and concludes that the Pinsons have not identified any specific facts that demonstrate the existence of a genuine material fact as to malice or willful intent on the part of Equifax.

---

[4] In his deposition, Larry Pinson testified as follows: "Q: Do you feel like they [CSC] set – they hurt you because their conduct was negligent or do you feel like they hurt you because they set out intentionally and maliciously to do so? A: I can't answer that. Q: You don't know? A: I really don't know. Q: Okay. Have you seen any indications to think that the conduct that you're complaining of, of my client, was anything beyond negligent and was malicious or intentional? A: I've seen information that we agreed to that would be taken care of and be removed actually come back and report again. Q: And you're not sure if that was a mistake or intentional? A: Exactly. Q: Could have been a mistake, you'll spot that, it might have been? A: Might have been. I have no way of really knowing." "Q: Did you file a dispute or complaint with any of the credit reporting agencies regarding the information with your Litton loans? A: I recall that I did, and the reason I didn't – I don't recall that I really did because after 2003, I don't recall lodging any disputes with anyone. And my dispute was with Litton, not the credit bureau, in reference to what was being reported." [Docket No. 191-1 at 32-33, 77].

In her deposition, Lenelle Pinson testified as follows: "Q: Can you say whether my client's conduct [CSC's] was malicious or willful or whether it was just negligent? A: I don't know. Q: And do you not know because you don't know what was in their minds and intentions? A: Exactly." [Docket No. 191-2 at 4].

FCRA preempts certain state law claims absent malice or willful intent.  Pursuant to 15 U.S.C. § 1681h(e), no consumer may bring an action "in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency" based on information which that agency is required to disclose in accordance with the FCRA "except as to false information furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e).  Because the Pinsons have not established a genuine issue of material fact with respect to their allegation of Equifax's malice or willful intent, the Pinsons' state law claims of libel and false light invasion of privacy are preempted.

The Pinsons' only remaining state claim is a punitive damage claim under Oklahoma law.  [Docket No. 77 at 11].  The Pinsons have produced nothing to raise a genuine issue of material fact supportive of their claim for punitive damages.  Furthermore, the Pinsons' state law claim for punitive damages is not an independent cause of action, but depends upon the existence of a separate claim.  *Smith v. Warehouse Market, Inc.*, 1978 OK 125, ¶ 10, 586 P.2d 724, 726 (Okla. 1978) ("[I]n this state a claim for punitive damages cannot be a separate and independent cause of action, but is only incidental or collateral to the claim for actual damages. . . .").

**WHEREFORE**, Defendant Equifax Information Services LLC's Renewed and Amended Motion for Summary Judgment [Document No. 290] is granted.

**IT IS SO ORDERED** this 2nd day of June 2008.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

9